Case in our call this afternoon is agenda number 18, case number 107-429, Joseph G. Pasolino versus the City of Zion. Counsel may proceed. Good afternoon, your honors. I may please the court, I'm Paul Keller on behalf of the defendant, appellant, City of Zion. The issue in the case is whether the City of Zion violated Pasolino's, the owner's, right to due process by failing to give them personal notice of the rezoning of their property pursuant to the Comprehensive Rezoning Act, that is section 11-13-2 of the Illinois Municipal Code. The trial court held that section 11-13-2 is unconstitutional as applied in this case because while the City of Zion followed the statute to the letter, the statute does not require personal notice to the owners of the property being rezoned. Just to put this in a little bit of context, in the more typical zoning case, the issue of notice to the owner of the property doesn't normally arise because it is usually the owner of the property who is applying for the rezoning change. The city, of course, does not dispute the fact that the due process clause does apply to zoning situations. The question for the court in this case is what process is due? Section 11-13-2 requires a public hearing and publication, newspaper publication, of notice of that public hearing. The question is does due process require personal notice every time some protected interest is affected by governmental action? The answer, of course, is no. The case cited by the appellees in the Mullane case of the U.S. Supreme Court says that there must be a balancing of the interests of the individual, of the potential harm, and the public interest. As to the harm to the individual, it has to do with the degree of the potential deprivation of due process or of protected interests. How much is the individual harmed? Here, in this case, the owner made no effort to, while we're not dealing with the specific facts of the case, only the legal issue, the owner here made no effort to exercise his development rights until 2001, which was some 30 years after he acquired the subject property and five years after the comprehensive rezoning in 1996. Now, Mr. Pasolino doesn't challenge the rezoning on the grounds that it was unreasonable, but clearly the conditions in the city of Zion could have changed, and in fact did change, during the 30 years between the time he acquired the property and the time he applied for the permit to develop this part of it. And what was reasonable in 1971 could well have become inappropriate by 1996 when the comprehensive rezoning took place. So there was no real deprivation of any of the owner's actual exercise of any of his rights until 2001 when he came back to the city and applied for building permits for the final phase of his development. When Mr. Pasolino discovered that his use of the property had been limited, he was not, at that point, without some kind of remedy. There was the opportunity for a post-deprivation hearing. He could have applied to the city for a further map amendment to change the zoning on his property back to what it had previously been back in 1971 when he first acquired it. And in a due process analysis, a post-deprivation hearing pretty much cures any harm to the individual that was caused by a pre-deprivation proceeding. The second element of the balancing test is the fairness and the reliability of the existing pre-termination procedures and the value, if any, that is added to the process by additional procedural safeguards. In this case, the public hearing, and I'm paraphrasing from Chicago Title and Trust versus Palatine, I'm paraphrasing it. The public hearing in the comprehensive rezoning process itself provides a careful and scientific study by a competent commission with the opportunity to the public to express its views and to make objections so that the zoning commission can balance the objections against the advantages and the disadvantages. And reach a sound conclusion. So the process itself in the comprehensive rezoning situation provides for a fair and reliable pre-termination proceeding, albeit without the personal notice. And finally, in the comprehensive zoning case and in the deprivation analysis, the due process analysis, we have to, according to the Supreme Court, balance the public interest of additional pre-termination procedural safeguards against the disadvantage, the harm to the public interest. And in this situation, the administrative burden of providing personal notice is unmanageable. In a comprehensive rezoning situation where the entire community, the entire municipality is being reconsidered for remapping, redesign of the entire zoning map for the entire community, requiring personal notice. How many property owners were affected by the comprehensive plan? Well, at the end of the process, there were about 85 parcels that were actually rezoned. But at the beginning of the process, the entire city was under consideration for remapping. The existing zoning map was repealed, and the entire city was open for reconsideration. The property tax was paid on these parcels, substantial parcels of land, I think. Mr. Pasolinos? Yes. Yes, property taxes were paid. He already built some private single-family dwellings and some 48 multiple-family. That's correct, Your Honor. When did that happen? That was in 1972, I believe. And from 1972 forward to 1996, he paid taxes on the property? Yes. And apparently, that record was kept somewhere that was accessible to the city of Zion, wasn't it? Certainly. Right. They could have easily found his address. I don't think there's any question but that had the city looked for Mr. Pasolino, it could easily have found by doing a title search or checking the tax records, yes. Now, were any of the other parcels of land nearly as large as this one? I believe some were as large, yes. I don't recall offhand, but, yes, I believe some were as large. In keeping with that line of questions, Mr. Keller, there's a tentative report that's prepared, right? By the Zoning Commission? Right. Yes. Presumably identifying the number of parcels? Yes. And in this case, 85 parcels were affected? Yes. Postage for that, for personal notice to 85 parcels, would have been $30 approximately? Approximately, yes. Right. So in this balancing test that you talk about and the burden to Zion in this particular case, if you take the tentative report into account, it's not much of an administrative burden, is it? Well, in retrospect, considering that the 85 parcels that were actually rezoned would have cost $30 and we probably could have identified all of the owners, that would not be a huge administrative burden. But at the beginning of the process, particularly keep in mind that the comprehensive rezoning statute applies in two distinct situations. First of all, it applies when the municipality has never had any kind of zoning and is mapping and developing its zoning regulations for the very first time. In that situation, the zoning commission is established and develops the zoning map for the entire community. And every single parcel in the municipality is being mapped, is being affected by zoning. I have no doubts with that, but isn't pointing to the comprehensive map missing the point? The statute itself talks in terms of the tentative report. The commission should prepare a tentative report, presumably to identify the parcels. Yes. Right? Right. And a proposed zoning ordinance for the entire municipality. So at some point in time, the municipality, before the rezoning takes place, has a pretty definitive idea of what parcels are affected, don't they? Yes. So why wouldn't the burden be weighed on the tentative report versus the burden weighed on the expansive rezoning? Well, because, first of all, at that point in the process, by the time the tentative report comes out, the public hearing may well have already taken place. Well, it hadn't here, had it? I think you're right. I think you're right, Your Honor. It certainly was, as Justice Thomas has observed, you could have mailed notice to each of the 85 properties. Could have, yes. Yes, could have. But I don't believe that it's appropriate. Now, the publication in this instance, the newspaper publication, I'm trying to determine how to characterize the two newspapers that were involved. One was like a, I'm going to call it the type of newspaper you would see at the checkout counter at the grocery store. Was it a newspaper like that? The plaintiff has characterized one of them as a shopper's newspaper. The actual copies of the notices are part of the record in this case. They're exhibits to both plaintiff's pleadings and to the defendant's pleadings. And they were fairly large, five by seven, I think, or thereabouts ads in these two newspapers. But I don't think we can make a constitutional decision based on where the notices were published. It's part of the balancing process, isn't it? I'm not sure that the identity of the newspaper in which the notice is published. Wouldn't you weigh the likelihood that the newspaper publication would probably not be successful at notifying anybody? I wouldn't assume that, Your Honor. You wouldn't? No. Well, not many. Wouldn't you agree with that? If we're talking, well, I don't know. That's really speculative. How about a property owner that didn't live in the community? It may well not reach that. And Mr. Casolino would have fallen into that category. Correct. But I don't believe it's appropriate to make a zoning, a constitutional decision based upon the type of newspaper in which the notice was published, nor based upon the number of pieces of property. I'm sorry. I don't mean to interrupt you. You go right ahead. I'm sorry. Go ahead. All right. Nor do I think it's appropriate to make a constitutional decision based upon the number of parcels which were actually rezoned. Yes, in this case, it was 85 parcels, and the postage for that kind of notice may not have been extravagant. We would have had the problem of doing the title searches on each of those properties to find out the record owner, or the tax records to find out the taxpayer of record. There would have been some additional expense in that. Nevertheless, we're not claiming that. Wouldn't for most people a simple computer search have done that, though? Not in 1996, I don't think, Your Honor. It may have been. I'm not sure how good the Lake County records were or whether they were available online at that point. I want to go back to your statement that in this particular case, the tentative report, you think, was prepared before the hearing. Doesn't the statute call for the report to be prepared before the hearing in each case? I believe that's true, yes. Okay. Yes. So I'm just trying to understand your broader argument that the hearing sometimes takes place before the tentative report. If that was the case, it would be contrary to the statute. I may have misspoken on that, yes. Okay. All right. Well, counsel, let me follow up on that. The notice that's in the record, I pulled it at the clerk's office to get it for me. It simply says that there's going to be a public hearing. It says the two dates, and it says a copy of the recently adopted 2010 comprehensive plan update and proposed comprehensive zoning amendment will be available. Correct. So when that notice ran in whatever newspaper it was, it says the bargainer. When it says the recently updated and proposed zoning amendment, is that referring to what would have identified the 85 parcels? Yes, Your Honor. So at that point, when notice went in, your public notice went out, there had been a determination of the 85 parcels that if somebody had looked, they could have then sent notice in addition to the public hearing. I would agree with that, yes. But it could well have been 185 parcels or 285 parcels or every parcel in the city. In the case of the original, the first zoning map ever adopted by a community, it is as many parcels as there are in the community. And so I'm not sure that we can construe, as I say, the constitutional issue based upon the number of parcels involved. If the court were to say, well, there are only 85 parcels involved in this, so it wouldn't have been a burden, where do you draw that line? If 85 requires personal notice, does 385 require personal notice? I'm not sure it's useful to make a distinction. If you're in the weighing business, you can always find a way to counterbalance. I'm sorry? Well, if you're doing a weighing, you can always change the weights, which is kind of what you're doing here. Right. And we have real weights that apply to this as applied claim, which is 85. That is true. That is true. And I just wanted to make sure you have a chance to comment on it. Well, I agree. This is what I'm ‑‑ another little thing. There is a claim that the notice itself was defective because it lacked detail and was not reasonably calculated to appraise interested parties of dependency of an action that would significantly affect their rights. Correct. Do you agree or disagree with that statement? I disagree that the notice was inadequate in that regard. The notice complied with the statute, which requires notice of the public hearing, not notice of those parcels to be rezoned. And the notice clearly provided information about the fact of the public hearing, and that's all that the statute requires. It is important that we do have an as applied challenge here, right, because we are dealing with 85 parcels. We are dealing with a tentative report. We are dealing with the timing of all of that versus an on its face challenge, which would, you know, maybe some of the examples that you come up with are correct. The first time comprehensive zoning is out there that, you know, maybe it is overly burdensome, but we're only dealing with an as applied challenge here, right? We are. That is correct. Counsel, let me ask you this question. I'm really curious. It says a copy of the recently adopted 2010 comprehensive plan. Why would it be called a 2010 plan when it was published in 1996? Normally, Your Honor, a comprehensive plan looks into the future, and it is the plan for the next 10 years or the next 15 years in the life of a community where the corporate authorities see the community, how they see the community developing during the period between 96 and 2010. So would the plan not take effect until 2010? No, no, no. It takes effect as soon as it's adopted, but it is designed to control the development and growth of the community up to 2010. Comprehensive plans are typically amended, revised, looked at again every 5, 10, 15 years to keep them current. And one other question on this balancing act. Does the municipality not have to give direct specific notice to property owners in a special use or variance? Well, again, in that situation, it's typically the property owner himself who is applying for the special use. I'm talking about the people who are under the impact or the adjoining residents. I'm sorry. Yeah, there are a couple of situations in which the statute does require the applicant for zoning relief, the property owner, to notify owners within the 250-foot radius. Section 1113.7 is one of those sections. On its face, it applies only to the city of Chicago. The municipality has a population over 500,000. There's some question as to whether it should be applied to smaller communities. That's an open question in municipal law right now. But, yeah, there are those, that particular situation when the owner is required to notify surrounding property owners. But there is no section of the zoning statute that requires notice to the applicant, because typically it's the applicant that's applying for the relief. I see my time is up. Thank you. May it please the Court, I'm Bob Mussini. I represent the Pasolinos in this matter, the Pelleys. I'd like to hit on a couple things right off in response to some of the questions that have been presented to Mr. Keller. First of all, with respect to Justice Thomas' questions with regard to the tentative report, what typically happens in these types of situations, and admittedly they do not happen that frequently, because it is something that either occurs at the time that a municipality is first creating its zoning, or at a time such as what Zion did in this particular one. They apparently had an ordinance that had been on the books for a number of years, and they decided that it was time to review and look at things. A lot of time goes into that work. With respect to the comprehensive plan, the 2010 comprehensive plan, there were more than likely, and I don't know this for a fact, but I've seen it in other municipalities where I've been involved, there were probably a couple years' worth of either meetings internally with staff or from outside that went into the preparation of that new comprehensive plan. Following up with that and the new zoning ordinance, the same type of process goes on. One of my clients, and we're still there even with the election of last month, the city of Waukegan, for the past three years they've been working on preparing what will ultimately be a tentative report on a new comprehensive rezoning ordinance. What happens is when you arrive at the point where you get to a tentative report, and especially in the case of a mature city such as Waukegan, which is the other example I just gave, the reality is the number of parcels that are going to be subject to actual change of classification typically is nowhere near the total number of parcels within, because with a developed community you have your zones that have been created, either by the prior zoning that's been done by the community or simply by the way the market has created it, so that you aren't going to be running into huge numbers of properties. Once that tentative report is prepared, that is what is essentially going out there. So Zion knew when they were going ahead and putting their ads in the papers back in 1996, they knew that what they were looking at was more than likely about 85 properties that were going to be rezoned. That could have gone down somewhat based upon what happened at the public hearings, and it also could have gone up a little bit depending on public input on it. I will point out to the justices that attached to the same exhibit where the notice of public hearing was put into the Bargainer and the Zion Benton News, which by the way is a four by four ad, attached to that are the minutes of the public hearing and also proposed comprehensive zoning changes. This was basically something that was available at the public hearing back in 1996, which gives an idea with handwritten notes on it what properties were going to be subject to the zoning changes. So the argument that we have made throughout is that they'd owned this property since 1972, and each year they received an assessment notice from the county. They received a property tax bill from the county. They paid it each year. They had that information available, freely available to Zion at the county of Lake. Zion could have come in and obtained it, prepared the very modest postage. No question there would have been some administrative cost in preparing the letters and getting the rest of it out, but I would suggest to you that in this situation, it's before the court with 85 properties, we're probably not looking at more than a few hundred dollars to get notice to everyone. And while I suppose a municipal budget issue could be that's a little bit much, we don't want to do that, the fact of the matter is, and Mr. Pasolino is just one case, is that the property owned by each one of those individuals is important to them, the value. When you change the use or the use of a property, you can affect how, of course, it can be used, and also the value of the property. That can, in one simple parcel, can be much more than the total cost of what that information was. How else, counsel, would your client have known about this zoning change? I mean, he bought the property in 71, is that right? He purchased the property in November of 1972, if I might very briefly. He built 48 units of apartments and eight single-family homes, and those were constructed in the following years. I believe he sold off, well, the single-family homes were sold as completed, and the 48-unit apartment building was sold, I believe, in 1978. Okay. So other than just monitoring what the city was doing? Correct. Regularly? Correct. And you'll recall, when the U.S. Supreme Court decided the Moline case, one of the issues that they looked at, even back in 1950, was this problem of a non-resident property owner. The value to that non-resident owner is the same as if you're a resident. And this is an example, not of someone living in California, for example. Mr. Pasolino has lived in Lake County through the entire time period. He's not lived close enough to Zion where he was able to get a copy or to receive a copy of these news weeklies that went out with this ad. I think the point is that you have to get out a meaningful notice so that the property owners have an opportunity to avail themselves of being heard before that change that can significantly affect their property is final. Again, if you take a look at the notice, it says, Public Hearing, City of Zion Zoning, Comprehensive Zoning Amendment. And then it goes on and tells you when the hearings are going to take place and a copy. Now, I ask you, as all of us as lawyers here, what in the world is a comprehensive zoning amendment? If you are an owner of property and you see this, it doesn't give any information about what that is. It doesn't indicate that, in fact, if you own property within the community, something about this thing might actually affect the value of your property because it's going to change the zoning that you have on it. They didn't take the time to produce, and they had the 85 properties. They had to have had either a permanent index number or an address on each one of those because they had identified them on the maps as to where they are and the fact that their zoning was going to be changed. Here's an example. Going into the future, you can have a little bit longer notice where you indicate the PIN numbers. These are potential properties that will be affected by their zoning classification may be affected by this action. Give you PIN numbers. Give you addresses. Include the names if you get that from the county. That's the type of thing that could be done. Another thing that could be done, and I know this for an example from, again, the city of Waukegan, we have nine wards in Waukegan, and I know when they did this last time back in 1978, they published by ward. They had a map in the newspaper. Admittedly, not too easy to see because you just can't reproduce it properly, but they had ward meetings for people to come in. There are ways to get around the overall approach of a city. Now, of course, I realize that in a place like the city of Chicago, you may be dealing with a different animal, but even there you have a mature city, and I would suspect that if they could ever get that zoning ordinance under control and come up with a comprehensive amendment, you might find that the actual changes of use are not as great as one might think. Consequently, this can be done. I cited a case in my brief, Aurora National Bank versus Aurora. That's a 1980 second district case. In that particular case, and I think the good thing about that is it gives you an opportunity to see what a community did to get a notice out. A two-block area of the downtown part of Aurora was being looked at for what they referred in the opinion as a comprehensive reclassification. Aurora prepared a notice which contained the identification of each of the properties, the date and time of the particular hearing that was going to take place, and the proposed changes for those properties. They then, and I don't know exactly because it doesn't indicate it in the opinion, but they sent out a notice to each of the affected property owners within that two-block area to let them basically see the same thing that they had published in the newspaper. So there's an example, and let's assume there were 70 properties within a two-city block area. There's an example of how this can be very easily done. It wasn't overburdensome, and it provided a meaningful notice to all the property owners to come in and raise an issue if they had it. Mr. Massini, are you arguing that the notice in this case didn't comply with the statute or simply that the statute is unconstitutional? I argued that the statute was unconstitutional as applied to my client's situation. There's nothing in the statute that talks about putting in property numbers or descriptions. You're suggesting there's another way to do this that would be better, obviously. But would that save the constitutionality of the statute as applied in this case? I allowed in my brief that it might be the type of situation we're taking into account some of the things that were argued by counsel for the city that the court might look at this and say, well, in this situation, maybe a published notice is adequate. But what I think the court is looking at here, the deficiencies in this notice were just too great, given the facts, to preserve it in this instance. With the exception of American Oil in the Wells case, Illinois courts consistently found the publication notice is constitutionally sufficient and that personal notice is not required. And the reason for that is exactly what I've argued and what Paul and Mr. Keller indicated today. These cases get into the court system when I, the property owner, have asked for a change of my zoning. I get turned down by the governmental authority. I don't like it. I file a lawsuit. The issue of notice never really comes up. The two cases that I found here in Illinois that dealt with it was the 1975 case with American Oil versus the city of Chicago. And in the Wells case out of the second district, that was a situation where the neighboring property owner was argued that he had a due process right to know about it. And the court said, no, we're not going that far in what you're asking. But they did look at the American Oil case and basically were approving of what happened there. And the American Oil case, of course, was a little bit different situation, but it gave the appellate court the opportunity to look at a situation and just what kind of notice does that owner need. This was the unusual situation, of course, of a property being rezoned from business to residential. The city of Chicago did everything that the statute required, and that's the 11-13-14, which is the typical zoning change request. Most municipalities I think nowadays send out notice, actual notice, to property owners within 300 feet of the subject property. Well, of course, in all of those situations, I'm the owner. I've come in and asked for it, and the notice goes out to the surrounding owners. In the American Oil case, you had the unusual situation that somebody at the city of Chicago decided they ought to change the zoning of somebody's property without letting them know about it. And the court then had the opportunity to look at the due process implications of that. And relying on Mullane and Schroeder versus the city of New York, the court said, when you have something like this where the zoning is being changed that affects the property value and it is clearly a protectable property interest, we have to make sure that the property owner has an opportunity to challenge this. And that court also highlighted the fact that when you have readily available information, and I believe they talked about the tax records, which is exactly the same situation we're talking about here, you have to go that extra mile and make sure. So in all zoning cases, it could affect the value of the property, and there's information that can be located reasonably at a reasonable expense to notify those who are affected? If I understood the question correctly, yes, sir, it would be. Every zoning case involves the same situation. I trust I understood the question. Yes. Now, your opponent said you could have filed for a zoning amendment in the wake of this. Does that have any – number one, do you agree? And number two, does that have any basis or any – should it be something this court considers in this? No, I don't believe so. No, I don't believe it's something the court should consider in this instance. Yes, what Mr. Keller said is true. It was true three years ago when the lawsuit was filed. Frankly, it's still true today if the situation presents itself. There's nothing to prevent my client from going back and filing a typical rezoning application and asking that his earlier zoning be reinstated. There are a couple things that went on here. The fact of the matter is, and there were certain things in the argument that I think were slightly outside the facts that were before the court, but the fact of the matter is 1996 is when this rezoning occurred and changed my client's property from the multifamily to the single family. My client did go in to Zion in 2001 and actually had a proposal for a single family development. Now, I do not know the reason how that occurred because I was not involved in the matter. And I will tell you when I first met with my client in 2005, I asked him, why in the world did you go in? Did you ever find out how your zoning was changed? His answer to me was, nobody at that city would tell me how my zoning was changed. My response was, maybe your zoning's never been changed. Maybe it's a clerical mistake. The way that my client and I finally found out exactly how this property zoning was changed in 1996 was back in 2005 when Zion finally responded to a Freedom of Information Act request from me. So, yes, the answer is my client at that point could have elected to ask for a rezoning of his property. My advice to him based upon the law was, hey, you caught it here. This zoning has been changed without ever giving you notice. And regardless of the situation that it involved a comprehensive rezoning, I think that based upon the facts, you're entitled to relief and you ought to get your multifamily zoning back without having to go into the city and have them give you all sorts of reasons why you shouldn't get it. And at least so far as the Lake County Circuit Court was concerned, I was correct on that advice. Can I ask you, what is the specific relief you're requesting at this time? Is it merely to affirm the appellate court? Well, actually, in our case, to affirm the circuit court order on it. I believe that my client even is beyond that and his multifamily zoning should be intact. He basically, back in 1972, paid $35,000 to the city of Zion, this is part of the record, for help in extending the sanitary sewer line which would provide the opportunity for his property and other property in between where the line was and where it was coming to to be developed. He also paid, and you'll see it's part of the documentation, $10,000 to the city of Zion. This $10,000 was for sanitary sewer connection fees for 142 units of dwellings. Basically, Zion, and admittedly, how these things go on for 30 years, I do not know. And if I could, I'd try and share it with you. But 30 years later, he's ready to go ahead. He's paid for his sanitary sewer connections. He's paid toward that line being extended. And not only would the city not give him the zoning, they wouldn't even tell him how it was changed. So, yes, I would like to have the trial court affirmed, and I'd like this court to take a closer look at it and tell my client that he can go ahead and develop his property the way that he's entitled to from 1971. Would that involve declaring the rezoning void? Yes, it would, Your Honor. And I think in Illinois the law is very clear that notice before a change in zoning is both mandatory and jurisdictional. And if that proper notice is not given, the zoning that results from that is void. Typically, again, those are cases that deal with single property owners coming in and asking or the city doing something and not letting that property owner know. But in this case, I think it still applies. All the tenets of the law are still the same on that. I think you argued in your brief that your client had a vested interest in the multifamily zoning because of its investment. Is there any argument of any kind of a contractual obligation the city might have with regard to not changing the zoning based upon what your client has paid to the city? That was not presented in my brief, Your Honor. There's nothing further now. I just want to get back to that last point that you raised, Mr. Messina. The trial court entered, didn't the trial court find that the 1971 R2 zoning of the property remains in effect then? Yes, it did. Okay. So an affirmance by this court would be in agreement with the finding of unconstitutionality and a full affirmance would allow your client to go forward with the multifamily, right? I would like to believe so. I have a feeling I'll be back in front of Zion arguing why they're ‑‑ if you affirm it. I have a feeling I'll be back in front of Zion fighting with them over the question of them trying to rezone it again. So certainly if I can get something more here to be quite direct about it, I would be more than happy to have that as is my client. So is that something more, just precluding Zion from trying to rezone? Is that what you're saying? I like the sound of that, Your Honor, yes. I think contractually ‑‑ But you're doing it with a little glimmer in your eye as you're asking, right, or no? No, I feel very relaxed since I'm going to be sitting down in a moment. No, I'm very serious about that. Well, except counsel, there's no basis in the arguments for that, is there, to get to this additional? We did argue in our brief on a vested rights claim, but as I answered, Justice, no, we did not have anything in there on contract. Thank you. May it please the Court, just briefly. First, as to the American oil case, I want to make it clear that, or call the Court's attention to the fact that in that case, the Court went out of its way to imply that the City of Chicago there was attempting intentionally to conceal the rezoning from the owner of the property. There is no suggestion of that in this case. Zion has complied in good faith with the letter of the law, 1113.2, and had no reason to think that it was doing anything improper in following the letter of the law, publishing the notice, and not sending out personal notice. I want to emphasize also that in my opinion, the availability of post-deprivation relief to the plaintiff in the form of his right to apply for reinstatement of the 1971 zoning is all that he is entitled to, and that that option fully satisfies the requirement of due process of law. Is there any kind of a guarantee that that would be successful? No, of course not, but if it were not successful, then obviously the plaintiff would have the right to come back to court. No, I mean, we wouldn't make him go, if we were going to guarantee him that he would get that rezoning, we wouldn't make him go through the rezoning process. And then finally, just to clarify the nature of the relief that this court is being asked to grant to plaintiff, of course this case comes to this court directly from the trial court and not from the appellate court, and the trial court's final order expressly holds 1113-2 unconstitutional as applied in this case, and says that the 1971 zoning is still in effect as to this property. And I do not think there's any basis for this court to declare that the entire 1996 zoning ordinance is invalid, because we're only dealing with plaintiff's property here and not the entire rezoning ordinance. I would hate to see this case result in overturning the entire ordinance. I don't think that would be appropriate. And as to the alleged vested interest, because plaintiff paid permit fees or connection fees or tap-on fees back in 1972, I would go so far as to say that if the city did not allow, as it has not allowed, plaintiff to build as many units as he had paid permit fees for back in 1972, that it would owe him reimbursement of whatever portion of the fees that he cannot make use of. I just clarify that we're not trying to take money from him for work that we're not going to allow him to do. Mr. Keller, after an ordinance is passed that affects the rights of a party, like Mr. Pasolino in this particular case, is there anything more difficult about the process, the reapplying process with respect to reinstatement of the previous zoning classification versus being heard in the first instance or not? No, it's exactly the same process, Your Honor. You would apply to the city for a map amendment on this particular parcel. So is part of your argument that because you said, well, if it doesn't work out, he'd have the right to go back to court? Are you saying that this action in the circuit court was premature? Is that part of your argument or not? In response to one, I think Justice Garmon's question, she said, well, what happens? Is there any guarantee if he reapplies that he's going to get what he wants? And you said, no, but then he'd have a right to go back into court, presumably to be right where we are today? We had, the city had at an earlier stage of the proceedings in the trial court, filed a motion to dismiss on the grounds that the action was premature, that plaintiffs had not exhausted all of his administrative remedies, in that he had not applied for a map amendment to put the property back to what it had been. The trial court, for its own reasons, denied that motion and plaintiff ended up amending. Actually, I think perhaps the court never actually reached that decision because plaintiff amended his complaint. But it was our, it was the city's view at the time that the case should not have been in trial court at all, because Mr. Pasolino should have applied for the map amendment to put the property back to the 1971 status. And he has that same right today. I have nothing further. Thank you.  Thank you, Paul. Case number 107-429 will be taken under advisory.